### S. R. PENFIELD & E. J. GOODRICH v. EMMA J. MASON.

1. EVIDENCE TO ESTABLISH THE FACT WHETHER AN ACTION WAS BROUGHT WITHIN TIME LIMITED BY STATUTE.

   On the question whether an action was brought within the time limited by the statute: *Held*, that a copy of the petition and of the journal entry showing that the action was dismissed without prejudice, constitutes, in the absence of anything to the contrary, sufficient evidence of that fact.

2. IMPROPER CROSS-EXAMINATION OF PAYEE AS TO HER KNOWLEDGE OF THE CONSIDERATION OF THE NOTE.

   In an action on a note given by one partner in the name of both, it is improper to inquire of the plaintiff, payee, on cross-examination, as to her knowledge of the consideration for the note, it being a matter of defense.

3. NOTE GIVEN BY ONE PARTNER IN FIRM NAME, PRIMA FACIE ENTITLES PAYEE TO RECOVER.

   The payee of a note given by one partner in the firm name, and apparently in the firm business, is *prima facie*, entitled to recover thereon from the other partners; and in such case the burden of proving notice is on the one alleging notice.

4. NOTE GIVEN BY ONE PARTNER, RELATING TO PARTNERSHIP BUSINESS, MAKES THE OTHER PARTNER LIABLE.

   P. & G. were partners in a book store. P, gave a note in the firm name in payment for books purchased, and sold by a third person, on which sales P, was to receive a commission; *Held*, that this transaction was in the partnership business, so as to make G, liable on the note.

ERROR to the Court of Common Pleas of Lorain county.

MARVIN, J.

The case of L. R. Penfield and E. J. Goodrich against Emma J. Mason, is here for the second time upon a petition in error. At a former term a petition in error was filed by the present defendant in error.

The suit was brought in the court of common please by Mrs. Emma J. Mason against L. R. Penfield and E. J. Goodrich upon a promissory note, dated at Hillsdale, Michigan, January 28, 1887, calling for the payment of $600.00, with interest at eight per cent. in one month from date.

Both defendants set up that the note is barred by the statute of limitations, or rather that the action is barred because of the statute of Michigan, which provides that suit upon a contract not under seal shall be brought within six years after the cause of action arose, and our statute provides that when an action would be barred in the state in which the action arose it is to be barred in our own state.

If this were the first suit brought upon this note, there would be no question that the action would be barred; because this suit was brought on the twenty-fifth day of October, 1895; but when this action was before the court at the former term, the question was raised, and we held that because of an action brought in 1892, by Mason upon this note which was dismissed by the court for want of prosecution and not upon the merits, and dismissed after the period of six years from the time the cause of action arose, and that this suit was brought within one year thereafter, that under the provision of our statute it was not barred.

But it is said in this case that no proper evidence was introduced to show that the first action was not brought within the time fixed by the statute of Michigan.

The evidence on this subject is found on the 99th page of the bill of exceptions, and is simply a copy of the petition, which was filed in the case that is said to have been brought in 1892, together with a copy of the journal entry that was made in the case.

Mr. E. G. Johnson, who represented the defendants in the action, made this admission " I will admit that the paper offered by counsel for plaintiff in this case (and that was the petition filed), was filed in this court in case No. 3627 of Emma J. Mason against E. J. Goodrich and others, and it was filed at the time it bears date." The objection made is, that this does not establish that the action was commenced.

The journal of the court offered in evidence shows that the petition thus filed was afterwards dismissed by the court for want of prosecution without prejudice to a new action.

No evidence was introduced to show that a summons was issued upon this, but it is admitted this petition was filed in the court of common pleas of this county. The petition is here introduced, and shows it was upon this note and against these defendants; it is admitted it was filed in that case. We think that the evidence is sufficient to show, in the absence of any thing to the contrary, that the action was commenced within the time; so we adhere to the ruling of the court at the former hearing in this court, although at that time the question of whether this was sufficient evidence that that action was commenced was not raised.

An examination of the record shows that a good many objections were made and a good many exceptions were taken to the introduction of evidence, notably on the cross-examination of Mrs. Mason.

In addition to the defense of the statute of limitations, the defendant Goodrich claims that the note was given by Penfield alone. Goodrich and Penfield were partners doing a retail business at Hillsdale, Michigan, Goodrich living in Ohio, in this county. He did not spend his time at Hillsdale. Penfield spent his time at Hillsdale. Goodrich says that Penfield gave the note and signed the name of the firm " Penfield &, Goodrich " for a debt in which he, Goodrich, had no interest; in which the firm of Penfield & Goodrich had no interest. That Mason, the payee, the plaintiff below in this action, knew of that fact, and that hence he is not liable upon the note.

Upon the examination of Mrs. Mason it was sought to show that she knew that the note was given in payment of a debt owing by her son-in-law Allen to a Mr. Stebbens of Chicago. The court excluded the evidence ruling that the questions put were not proper, and it is manifest that the court did that upon the ground that it was not a proper cross-examination of Mrs. Mason; that it was going into the defendant's case, because when Allen was upon the stand, he was permitted to testify to conversations, the same conversations that were asked about of Mrs Mason, and Allen was permitted to tell all about it. There was no error in the ruling of the court upon the question. Nor do we find that in any of the rulings upon the evidence there was any error to the prejudice of the plaintiffs in error, or either of them.

The court allowed evidence to be given to show that the note was given for money furnished to Penfield by Mrs. Mason; that the money thus obtained from Mrs. Mason was used in the payment of a debt to Stebbens; that the debt to Stebbens was evidenced by promissory notes

signed by Penfield & Goodrich. That the indebtedness to Stebbens accrued on account of a certain publication sold by Stebbens, called "Cram's Atlas." The evidence shows that Allen was engaged in the selling of this atlas in the state of Michigan. That Stebbens, who was either the publisher or the wholesale dealer, I believe the publisher of the atlas, would not sell to Allen upon his credit, and that Allen made an arrangemet with Penfield by which Penfield should order the atlases, and Penfield should have a commission of five per cent. upon such as Allen should sell.

Allen in his testimony says that he don't remember that that arrangement of paying five per cent. commission was made; he says so in this record, but Penfield says it was; so that the jury were justified in believing that it was agreed upon.

Now, when this case was before this court at the former hearing, in the opinion then delivered it was said that under the evidence, the indebtedness to Stebbens was an indebtedness of the firm of Penfield & Goodrich; that was said by this court upon the same evidence which is found in the present record.

Penfield & Goodrich were engaged in the book business, the selling of books at Hillsdale. Here was the publication of an atlas. It is true Mr. Goodrich testifies that the atlas was not sold in book stores, and upon cross-examination he knows that because he is in the book trade, and has not been able to get Cram's Atlas to sell after some correspondence; but we still think, as announced in the opinion before, that if Penfield went into the business of dealing in books of a particular kind at Hillsdale without letting his partner know that he was engaged in the selling of that book, to-wit: Cram's Atlas, but he was engaged in that business to the extent that he was having the books bought on the credit of Penfield & Goodrich, and evidencing the indebtedness for the books by the notes of Penfield & Goodrich, and receiving a commission for the publication thus furnished, that Goodrich would be entitled to his proportionate share of that five per cent. and that it was the business of Penfield & Goodrich.

We do not believe that Penfield could prevent Goodrich from having an interest in the sale of books at their store in Hillsdale; that he could say this publication I will call my own individual matter. I will have the work shipped to Penfield & Goodrich; I will have the firm of Penfield & Goodrich order, and have the books paid for by their notes; but I will take the profit of that publication, and Goodrich shall have no part of it. We still think this business belonged to the firm of Penfield & Goodrich, and in this connection I may as well speak of the language that was used by the court in its charge, without stopping to read it all. The substance of it was, that he had permitted evidence of the dealings and Stebbens to be introduced, but that whatever the character of the notes given by Penfield & Goodrich to Stebbens was, whether it was an indebtedness of Penfield & Goodrich or not, was a matter with which they had no concern.

This is the substance of what the court said. We think that whether this instruction was proper or not, it was not to the prejudice of either Penfield or Goodrich, under the view we take of the case that this was the business of Penfield & Goodrich.

If we are right in the proposition that this indebtedness to Stebbens was the indebtedness of Penfield & Goodrich, and the money borrowed

from Mason was used to pay that debt, then neither Penfield or Goodrich suffered by this charge.

The court said to the jury that a note given, signed with the firm name, and given by one of the partners, *prima facie* was the indebtedness of the co-partnership, and that the party taking such note, even though it were given for an individual indebtedness of the partner who signed the name, still, unless the party accepting the note had actual or constructive notice, (the court defined what was meant by constructive notice properly), that it was not for the business of the firm, then the firm would be bound by such note.

And the court said further, that the burden of showing that the payee of the note or the holder of the note had such notice, actual or constructive, that the note was not given for a debt of the firm, was upon the defendant undertaking to defend on that ground.

This is urged upon us as error, and we are cited to the text and notes in the 17th Am. & E. Enc. of Law, at pages 1024 and 5, where this language is used.

" The signature or indorsement of the name of a firm upon a bill or note is presumed to constitute a joint obligation incurred in good faith and in the regular course of business, the burden of proof resting with the partners to establish the contrary ; but upon the establishment of the fact that the obligation was given by the signing partner to pay an individual debt, or to obtain a loan for himself, or as an accommodation or security for others, or for a purpose outside of the scope of the business, or for other unauthorized or illegal purpose, the burden is shifted, and it then rests with the holder to establish that the partners either authorized or subsequently ratified its issue."

A large number of authorities are cited to that proposition in this work ; quite a number of those are valuable and we have examined them. But it will be noticed that the matter here spoken of is where the note is given to pay a debt of the partner who signs the note, or as accommodation or surety for others, or purposes of the scope of business, or for some authorized or illegal purpose.

One of the cases cited is the New York Fireman's Insurance Co. v. Bennett et al., 5 Comr., 574. That is one of the authorities cited in support of the proposition which I have just read from the Encyclopedia, I read from the syllabus :

" Though the endorsement of a note, by one of the several partners, in the partnership name, for his individual purpose, without the consent or knowledge of the other partners, will, after the security has passed into the hands of a *bona fide* holder, bind the firm ; yet an endorsee, who, at the time of receiving such security, did not know, but was ignorant through gross negligence, that it was indorsed under such circumstances, cannot avail himself of it to subject the firm. The endorsement of a note by one of several partners, in the partnership name, as surety for a third person, without the consent or knowledge of the other partners, will not bind the firm ; and the burden of proving the authority of the partner so using the partnership name, lies on the creditor or holder of the note.

" Therefore, where A. B. and C. were partners, doing business in the city of New York, where A. resided, and in Fredericksburgh in Virginia, where B. and C. resided ; and A. indorsed a note in New York, in the partnership name, without the consent or knowledge of B. and C., as the mere surety of D. a third person, for a debt previously due from D.

to the indorsee, the partnership having no interest in the transaction ; in an action by the indorsee, against all the partners as indorsers, it was held, that the plaintiff could not recover, although the jury should find, that he had no knowledge, express or implied, of A's want of authority."

Now an examination of that case will show that the indorsee was a creditor of D., and that the circumstances were such that a prudent man would have inquired into how it came that the partnership name was used here as indorser of that note to secure the debt of still another firm. I will read from the text here.

" By long established law, originating in the custom of merchants, a contract by one partner, having the appearance of being in behalf of the firm, is considered as being obligatory on the partnership.   Whenever a bill is drawn, accepted or indorsed, by one of the several partners, during the partnership existence, and in behalf of the firm, and it gets into the hands of a *bona fide* holder, the partners are liable, though in truth the partner negotiated the bill without the consent of the partners, and for his own peculiar benefit.   But, in respect of a person, who, at the time of receiving the bill, knew or had reason to believe, that the partner negotiated it for his individual advantage, and without the concurrence of his associates, the bill is entirely unavailable."

Now the court in the opinion held in substance this, and an examination of the language used in the Encyclopedia, it seems to me shows that the text writer meant this, where there is a debt owing by one of the partners, or where one of the partners for the purpose of securing the debt of some outsider, uses the name of the firm without authority, or rather uses it under such circumstances that the payee has actual or constructive notice that the firm name was not used for the benefit of the firm or the business of the firm then in order to hold the partners who did not make use of the name, I mean partners other than he who signed the name, in order to hold the other partners, the burden is upon the creditors to show that they assented either before or after the making of the note, or the indorsement of the bill, that it was done either with their approval or that they thereafter with knowledge ratified it.   But the burden is upon the creditor to show that.

An examination of every case cited and of some which are not cited in that text we think establishes the proposition that the party to whom a note is given or who is in any way a *bona fide* holder of the paper, is entitled to recover where it is apparently in the partnership business and there is no notice to him that it is not in the partnership business, and that these other cases establish that the burden is upon the party who seeks to show that there was notice.

In N. Y. Fireman's Ins. Co. v. Bennett, *supra*, to which attention has been called, the opinion contains a very full discussion of the rights of partners to bind the firm, and of the circumstances under which a partner may be relieved.   To the same effect is the case of Heffron v. Honaford, 40 Mich., 305.   The case of Sebor v. Armstrong, 3 Pick., 5. The case of Hommell v. Ganewell, 5th Black., 210.   Authorities cited in these cases fully justify as we think the charge of the court upon the proposition which has been discussed, and the charge of the court as given ; which I will not stop to read, in which the court used language as to the right of a creditor who receives a partnership note to collect upon it where it is received in good faith and without any notice, actual or constructive, that it it not the note of the firm.

And this disposes of the requests made by the defendant which were refused, which I will not stop to read, but which, if the law is as I have stated, as we understand it to be, the court properly refused. We find do error in the case for which it should be reversed, and the judgment is affirmed.

*E. G. Johnson* and *W. B. Bedortha*, for plaintiffs in error.

*Ben W. Johnson* and *N. L. Johnson*, for defendant in error.